1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PAULA TILLEY,

11             Plaintiff,                    Civ. No. S-11-1134 KJM CKD
             vs.
12
                                             ORDER
13   AMPRO MORTGAGE, an Arizona
     corporation, et al.
14
             Defendants.
15   _____/

16         Plaintiff challenges the foreclosure and imminent trustee's sale of her home in a

17   complaint raising thirteen causes of action: (1) violation of the Homeowner's Equity Protection

18   Act; (2) violation of the Real Estate Settlement Procedures Act (RESPA); (3) violation of the

19   Truth In Lending Act (TILA); (4) violation of the Fair Credit Reporting Act; (5) fraudulent

20   misrepresentation; (6) breach of fiduciary duties; (7) unjust enrichment; (8) civil conspiracy;

21   (9) civil RICO violations; (10) quiet title; (11) usury and fraud; (12) wrongful foreclosure; and

22   (13) breach of security interest.  She names the following defendants: Ampro Mortgage; Liberty

23   Title Company: Mortgage Electronic Registration Systems, Inc. (MERS); J.P. Morgan Chase

24   /////

25   /////

26   /////

1    Bank; U.S. Bank; Wamu Mortgage Pass Through Certificate for WMALT Series 2006-AR8

2    Trust (WAMU); California Reconveyance Company (CRC); and Does 1-20.

3           Defendants MERS, JPMorgan Chase Bank, US Bank National Association as

4    Trustee for WAMU (erroneously sued as U.S. Bank), Wamu Mortgage Pass Through Certificate

5    for WMALT Series 2006-AR8 Trust), and California Reconveyance Company have filed a

6    motion to dismiss for failure to state a claim.  (ECF No.8).[1]  Plaintiff has opposed the motion and

7    defendants have filed a reply.  The court submitted this motion on the pleadings.

8           Plaintiff has also filed a motion for a preliminary injunction, which sought to

9    enjoin the trustee's sale of the property set for October 31, 2011.  Defendants opposed the

10   motion and plaintiff replied.  This, too, was submitted on the pleadings.

11          Because the viability of the motion for injunctive relief depends on the viability

12   of the complaint, the court considers the motion to dismiss first.

13   I.  Standards For A Motion To Dismiss

14          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

15   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

16   dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

17   under a cognizable legal theory."  *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699

18   (9th Cir. 1990).

19          Although a complaint need contain only "a short and plain statement of the claim

20   showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)(2)), in order to survive a

21   motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to

22   'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct.

23   1937, 1949 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)).  A

24

25          [1]  It appears that defendant Ampro Mortgage has been served, but has not appeared in this
     action.  *See* ECF No. 11.  The docket does not reflect that defendant Liberty Title Company has
26   not been served.

complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 129 S.Ct. at 1950.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal conclusion couched as a factual allegation,'" (*Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Parks School of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

Defendants have asked the court to take judicial notice of a number of documents recorded in Placer County, all relating to the acquisition of and foreclosure on 8800 Ridge Road, Newcastle, California, which is the property at issue.  ECF No. 9 (RFJN).  Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of adjudicative facts "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to

1   sources whose accuracy cannot reasonably be questioned."  Plaintiff does not object to the

2   court's consideration of these documents, most of which are attached to the complaint.  These

3   are properly before the court.  *Champlaie v. BAC Home Loans Servicing, LP,* 706 F.Supp.2d

4   1029, 1040 (E.D. Cal. 2009); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

5   (court may take judicial notice of matters of public record).  In connection with her opposition to

6   the motion to dismiss, approximately three months after she filed the complaint, plaintiff has

7   filed a number of exhibits, which she denominates "exhibits to the complaint."  *See generally*

8   ECF No. 13 (Plaintiff's Exhibit Index).  These documents do not correspond to the exhibits that

9   are in fact attached to the complaint nor are they mentioned in the body of the complaint.  As

10  plaintiff has not otherwise requested that the court take judicial notice of these documents and

11  shown that they are appropriate subjects of such notice, the court declines to consider them in

12  connection with the motion to dismiss.

13  II.  Background

14         On June 9, 2006, plaintiff Paula Tilley and her husband Michael Tilley executed

15  two deeds of trust, one in the amount of $622,000 and the second in the amount of $78,000, both

16  relating to the property described as 8800 Ridge Road, Newcastle.  RFJN Exs. 1 & 2.  The first

17  deed of trust identified the Tilleys as the borrowers; Ampro Mortgage, a division of United

18  Financial Mortgage Corp., as the lender; Liberty Title Company as the trustee; and MERS as the

19  nominee for the lender and the lender's successors and assigns, as well as the beneficiary under

20  the security interest.  *Id.*, Ex. 1.  The second deed of trust identified the Tilleys as the borrowers,

21  Ampro Mortgage as both the lender and trustee, and MERS as the lender's nominee and the

22  beneficiary of the deed of trust.  *Id.*, Ex. 2.  The deeds of trust grant the power to the trustee.  *Id.*,

23  Exs. 1 & 2.  In addition, both notify the borrowers that the note or a partial interest in the note,

24  plus the deed of trust, could be sold without prior notice to the borrower.  *Id.*  Finally, the deeds

25  provided that the lender had the option to appoint a successor trustee by an instrument executed

26  /////

4

1    by the lender and recorded in the county recorder's office.  *Id.*  These deeds were recorded in the

2    Placer County Recorder's Office on June 15, 2006.

3                On November 3, 2009, Deborah Brignac, Vice President of MERS, signed an

4    assignment of the deed of trust, assigning the deed and the note to U.S. Bank National

5    Association, as trust for WAMU Mortgage Pass Through Certificate, for WMALT Series 2006-

6    AR8; this was recorded in Placer County on November 10, 2009 at 9:21:29 a.m.  RFJN, Ex. 3.

7    On November 10, 2009, at 9:21:33 a.m., the Recorder's Office recorded a substitution of trustee,

8    substituting California Reconveyance Company (CRC) as trustee.  This was signed on

9    November 3, 2009, by Deborah Brignac, identified as Vice President of U.S. Bank National

10   Association, as trustee for the WAMU Mortgage Pass-Through Certificate, by JP Morgan Chase

11   Bank, as attorney-in-fact.  RFJN at 4.  On November 10, 2009, at 9:21:36 a.m., CRC recorded a

12   Notice of Default and Election To Sell, signed on November 3, 2009, by Silvia Freeberg,

13   Assistant Secretary of CRC.  RFJN, Ex. 5.

14              CRC recorded a Notice of Trustee's Sale on March 11, 2010; this was signed by

15   Deborah Brignac as Vice President.  RFJN, Ex. 6.  CRC recorded a second Notice of Trustee's

16   Sale on March 31, 2011.  RFJN, Ex. 7.  This was signed by James Tolliver, Assistant Secretary

17   of CRC.

18   III.  <u>Analysis</u>

19        A.  <u>HOEPA and TILA (First and Third Causes of Action)</u>

20              Plaintiff alleges that defendants failed to make certain disclosures required by the

21   Homeowner Equity Protection Act (HOEPA), 15 U.S.C. §§1639, *et seq.*, including the right to

22   rescind the transaction, the right not to complete the transaction, and the correct amount being

23   financed, and that the defendants extended credit to plaintiff without regard to her ability to pay.

24   Compl. ¶¶ 65-67, 69-70.  She also alleges that defendants violated the Truth in Lending Act

25   (TILA), 15 U.S.C. §§ 160a, *et seq.* and Regulation Z by failing to disclose various charges

26   connected to the financing of the loan and by calculating the annual percentage rate based on the

improper amounts.  Compl. ¶¶ 87-89.  Plaintiff alleges that as a result of these failures, she has

the right to rescind the loan and to a termination of the security interest in the property, as well

as a return of all monies paid in connection with the transaction.  Compl. ¶¶ 71, 73.  The

complaint also alleges that plaintiff did not learn of these violations until January 2011.

Defendants argue that any claims for rescission or cancellation of the loan are

time barred, that they are not the proper defendants for any such claims because the record

shows that Ampro Mortgage was the originating lender with the duty to disclose, and that

plaintiff has not tendered the loan proceeds, a necessary prerequisite to rescission.  Defendants'

Motion To Dismiss (MTD) at 9-11.  Plaintiff counters that she is entitled to equitable tolling of

the claims, that these defendants are liable because of the allegations of fraud and conspiracy,

and that tender should not be required because defendants' actions are void rather than merely

voidable.  Opp'n at 10-11.

Under the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.*, and its implementing

regulations, 12 C.F.R. § 226.1, *et seq.*, a lender must make certain disclosures to a borrower

before the consummation of a loan, including the finance charges, the annual percentage rate,

and the right to rescind the transaction.  15 U.S.C. § 1638(a) & (b); 12 C.F.R. §§ 226.17(b),

226.23(b); *see Yamamoto v. Bank of New York*, 329 F.3d 1167, 1169 (9th Cir. 2003).  TILA

provides causes of action for rescission and damages if the lender does not make the required

disclosures.

HOEPA is an amendment to TILA, designed to "combat predatory lending," and

applies only to certain high cost loans.  *In re First Alliance Mortgage Co.*, 471 F.3d 977, 984 n.1

(9th Cir. 2006); *Hamilton v. Bank of Blue Valley*, 746 F.Supp.2d 1160, 1179 (E.D. Cal. 2010)

(HOEPA is amendment to TILA); 15 U.S.C. §§ 1602(aa) & 1639.  To plead a HOEPA violation,

a plaintiff must allege facts showing that the loan is one covered by the statutes.  *Yulaeva v.*

*Greenpoint Mortgage Funding, Inc.*, 2010 WL 5394859, at *4 (E.D. Cal. Dec. 21, 2010).

Plaintiff's allegations fall short of this standard; although she suggests that the loan was

predatory and made without regard to her ability to pay, she provides no factual support for her

conclusory claim.  This is insufficient to meet her pleading requirements.  *Enriquez v.*

*Countrywide Home Loans*, *FSB*, ___ F.Supp.2d ___, 2011 WL 3861402, at *3 (D. Haw. Aug. 31,

2011).

Plaintiff's TILA claim is similarly conclusory: she says only that "[d]efendants

failed to provide accurate TILA disclosures and understated the amount being financed," without

describing the omitted disclosures.  Compl. ¶ 70.  This is insufficient to survive a motion to

dismiss.  *Compare Champlaie v. BAC Home Loans Servicing, LP*, 706 F.Supp.2d 1029, 1051

(E.D. Cal. 2009).

There are additional problems with plaintiff's TILA and HOEPA claims.  Both

TILA and HOEPA allow for rescission of certain loans and for damages, so long as the borrower

acts within specified time periods.  Under 15 U.S.C. § 1635(f), if the lender fails to provide

notice of rescission rights, the usual three day period is extended to three years from the date of

the consummation of the transaction.  Under 15 U.S.C. § 1640(e), if the borrower seeks damages

from TILA and HOEPA violations, he must file his action within one year of the transaction.

*Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1163 (9th Cir. 2002) (rescission); *Edstrom v.*

*Ndex West, LLC*, 2010 WL 4069482, at *3 (E.D. Cal. Oct. 18, 2010) (damages).  The Ninth

Circuit has observed that "the failure to make the required disclosures occurred, if at all, at the

time the loan documents were signed."  *Meyer v. Ameriquest Mortgage*, 342 F.3d 899, 902 (9th

Cir. 2003); *see also King v. State of California*, 784 F.2d 910, 915 (9th Cir. 1986).  In this case,

the loan documents were signed June 2006, rendering the TILA and HOEPA actions untimely.

Compl. ¶ 19.

There is no equitable tolling of any rescission claim:  § 1635(f) is a statute of

repose, not a statute of limitations, and as such is not subject to equitable tolling.  *Beach v.*

*Ocwen Federal Bank*, 523 U.S. 410, 412 (1998) ("we . . . hold that § 1635(f) completely

extinguishes the right of rescission at the end of the 3-year period"); *Lane v. Vitek Real Estate*

1   *Industries Group*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010).  Even assuming that plaintiff's

2   mortgage was subject to rescission, this action comes too late.  *See Champlaie*, 706 F.Supp.2d at

3   1042.

4            Plaintiff may be entitled to equitable tolling for her TILA and HOEPA damages

5   claims, but the complaint as pled is too conclusory to support the assertion.  "To establish

6   excusable delay, plaintiffs must show 'fraudulent conduct by the defendant[s] resulting in their

7   concealment of the operative facts, [their] failure . . . to discover the operative facts that are the

8   basis of [their] cause of action within the limitations period, and [their] *due diligence . . . until*

9   *discovery of those facts.*'" *Edstrom v. Ndex West. LLC*, 2010 WL 4069482, at *3 (quoting

10  *Federal Election Comm'n v. Williams*, 104 F.3d 237, 240-41 (9th Cir. 1996) (emphasis in

11  original)).  Plaintiff's assertion that she did not discover the violations until January 2011 "is

12  insufficient to establish the necessity for equitable tolling under even the pleading standards of

13  Federal Rule of Civil Procedure 8(a)."  *Lane,* 713 F.Supp. at 1100.

14           Finally, plaintiff contends that these defendants are liable for these violations

15  even though they were not the original lenders because of the fraud and civil conspiracy

16  allegations contained elsewhere in the complaint.  She provides absolutely no explanation as to

17  how these defendants' alleged participation in the fraud as alleged in the complaint makes them

18  liable for the alleged nondisclosures.  Moreover, as discussed more fully below, plaintiff's

19  conspiracy cause of action is itself inadequately pleaded.

20           Plaintiff will be given leave to amend this portion of the damage claims, if she is

21  able to do so in light of Federal Rule of Civil Procedure 11.

22       B.  <u>RESPA (Second Cause of Action)</u>

23           Plaintiff alleges that defendants "accepted charges for the rendering of real estate

24  services which were in fact charges for other than services actually performed."  Compl. ¶ 83.

25  Defendants argue that once again plaintiff has targeted the wrong defendants, as RESPA

26  concerns charges and fees collected as part of the loan transaction and that any claim is time-

1   barred.  MTD at 10-11.  Plaintiff counters she is entitled to equitable tolling and that the claim is

2   adequately pleaded.  Opp'n at 11.

3           Under the Real Estate Procedures Act, a lender may not charge a borrower fees

4   related to the mortgage other than for services actually performed.  12 U.S.C. § 2607(b);

5   *Jensen v. Quality Loan Service Corp*., 702 F.Supp.2d 1183, 1194 (E.D. Cal. 2010).  A claim

6   under § 2607 must be brought within a year after the "date of the occurrence of the

7   violation. . . ."  *See Brewer v. Indymac Bank*, 609 F.Supp.2d 1104, 1117 (E.D. Cal. 2009);

8   12 U.S.C. § 2614.  As noted above, plaintiff consummated this real estate loan in June 2006 ; the

9   instant action, filed in April 2011, is not timely.

10          As with TILA and HOEPA damage claims, the RESPA statute of limitations is

11   subject to equitable tolling.  *Id*. at 1117-18; *Yulaeva v. Greenpoint Mortgage Funding, Inc.* 2009

12   WL 2880393, at *14 (E.D. Cal. Sept. 3, 2009) (*Yulaeva I*).  In this case, plaintiff says only that

13   she did not learn of the problems until January 2011 and that she is a lay person.  However,

14   plaintiff must do more than claim she was unable to discover the nature of her claim because of

15   defendants' fraud, but rather must allege facts in support of a claim of excusable delay.  *Brewer*,

16   609 F.Supp.2d at 1117; *Edstrom*, 2010 WL 4069482, at *3.

17          And as with the TILA and HOEPA claims, plaintiff suggests these defendants are

18   liable even though they did not participate in the loan origination because of the fraud and

19   conspiracy claims.  As noted above, this is insufficient in the face of a motion to dismiss.

20          Plaintiff will be given leave to amend this claim if she is able, not only to provide

21   specifics about equitable tolling but also to describe the nature of the fees charged and the basis

22   for the claim that those fees did not relate to services performed, and to describe how these

23   defendants were involved in the alleged violations.  *Compare Palmer v. GMAC Commercial*

24   *Mortg*., 628 F.Supp.2d 186, 193-94 (D.D.C. 2009) (complaint was adequate, if thin, when

25   plaintiff alleged that excessive fees for the loan must have been for services not provided in light

26   of her credit-worthiness).

1    C.  Fair Credit Reporting Act (Fourth Cause Of Action)

2          Plaintiff alleges that defendants provided information to credit reporting agencies

3    and wrongfully reported negative information to these agencies and that she made all payments

4    on time "until Plaintiff's default."  Compl. ¶ 92.[2]  Without citing authority, defendants argue that

5    plaintiff's admission that she is in default bars her claim under the Fair Credit Reporting Act.

6          Among other things, the Fair Credit Reporting Act imposes general duties on

7    those who provide credit information to credit reporting agencies or "furnishers."  *Gorman v.*

8    *Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009), *cert. denied sub nom. FIA*

9    *Card Services, N.S. v. Gorman*, 131 S.Ct. 71 (2010).  Under 15 U.S.C. § 1681s-2(a), a furnisher

10   must provide accurate information; this section does not, however create a private right of action.

11   *Id.*; *Mitzel v. HSBC Card Services, Inc.*, 2011 WL 2848716, at *3 (D. Neb. July 15, 2011); 15

12   U.S.C. § 1681s-2(d).  Under 15 U.S.C. § 1681s-2(b), a furnisher must conduct an investigation

13   into the accuracy of information when it receives a report from a credit reporting agency that a

14   consumer disputes the information.  *Gorman*, 584 F.3d at 1154.  This section does create a

15   private right of action, but the duty arises only when the agency, not the consumer, gives notice

16   that the consumer disputes the information.  *Id.*; *Lee v. Wells Fargo Home Mortgage*, 2011 WL

17   5025877, at *2 (W.D. Mo. Oct. 21, 2011).  In her complaint, plaintiff alleges she has a private

18   right of action under § 1681s-2(b), but has not alleged that she complained to the credit reporting

19   agencies and that they in turn reported this dispute to the furnishers.  She will be given leave to

20   amend this portion of the complaint, if she can do so consonant with Rule 11 of the Federal

21   Rules of Civil Procedure.

22   /////

23   /////

24

25          [2]  Included in this cause of action are allegations previously made in the RESPA claim,
     relating to the alleged charges for services not rendered.  *See* Compl. ¶ 95.  Plaintiff is also
26   identified as "he" in this paragraph.

1        D.  <u>Fraudulent Misrepresentation and Fraud (Fifth and Eleventh Causes of Action)</u>

2                Although the exact nature of the fraud is hard to identify from the complaint,

3    plaintiff does allege that employees of defendant CRC executed and notarized forged documents

4    concerning the ownership of the loan, Compl. ¶ 25; that defendants did not tell plaintiff "their

5    credit and signatures were securities, the profits of which were to used [*sic*] to fund the predatory

6    'loan' (unbeknownst to Debtors, the loan papers were processed with an inflated appraisal and

7    inflated income)", Compl. ¶¶ 31, 161; defendants failed to notify plaintiff that the loan was

8    actually the proceeds from the sale of securities and failed to identify the true lender, Compl.

9    ¶ 32; and that defendants did not disclose the real party in interest or the various fees and

10   kickbacks to plaintiff.  Compl. ¶ 159.

11              Defendants argue that these claims are not timely and that the heightened

12   pleading standard for fraud, stemming from Rule 9(b) of the Federal Rules of Civil Procedure

13   have not been met.  MTD at 11-14.

14              Plaintiff counters that she cannot be expected to plead the fraud with particularity

15   because the information is within defendants' control.  Opp'n at 13-15.  She does not address the

16   statute of limitations issue.

17              In California, a claim of fraudulent misrepresentation has five elements:

18   (1) misrepresentation, which encompasses false representation, concealment and nondisclosure;

19   (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damage.  *Lazar v.*

20   *Superior Court*, 12 Cal.4th 631, 637 (1996); *Champlaie, LP*, 706 F.Supp.2d at 1058; *Dooms v.*

21   *Federal Home Loan Mortgage Corporation,* 2011 WL 1232989, at *13 (E.D. Cal. Mar. 31

22   2011).  A fraud claim against a corporation must provide information about the person who

23   made the representations challenged as fraudulent, and his or her authority to speak.  *Dooms,*

24   2011 WL 1232989, at *14.

25              In addition to the usual pleading requirements of Rule 8, allegations of fraud must

26   meet heightened pleading standards.  Under Rule 9(b), a plaintiff who alleges fraud "must state

with particularity the circumstances constituting the fraud," but may "aver[] generally" the state

of mind animating the fraud.  The pleading must "'be specific enough to give defendants notice

of the particular misconduct . . . so that they can defend against the charge and not just deny that

they have done anything wrong.'"  *Sanford v. Memberworks, Inc*., 625 F.3d 550, 558 (9th Cir.

2010) (quoting *Kearns v. Ford Motor Co.,* 567 F.3d. 1120, 1124 (9th Cir. 2009)).  To avoid

dismissal, the complaint must describe the time, place and specific content of the false

representations and identify the parties to the misrepresentations.  *Id*.; *Dooms*, 2011 WL

1232989, at *14.  In addition, a plaintiff may not "lump multiple defendants together" but rather

must "differentiate their allegations."  *Destine v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011)

(quoting *Cisneros v. Instant Capital Funding Grp., Inc*., 263 F.R.D. 595, 606-07 (E.D. Cal.

2009)).  Plaintiffs' conclusory claims – that defendants failed to disclose the true identity of the

lender, that CRC prepared false documents – fall far short of the specificity required by the

federal rules and do not match the elements of the cause of action as defined by federal law.

In California, a three year statute of limitations applies to fraud claims.  *See* Cal.

Civ. Code § 338(d) (three year statute of limitations for actions "on the ground of fraud or

mistake," which does not accrue "until the discovery . . . of the facts constituting the fraud").  A

party is deemed to have discovered the fraud when he "'has reason at least to suspect the factual

basis for its elements."  *Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal.4th 797, 807 (2005) (quoting

*Norgart v. The Upjohn Company*, 21 Cal.4th 383, 398 (1999)).  In this case, most of plaintiff's

fraud claims stem from the loan origination process, which occurred in 2009.  To the extent that

plaintiff alleges defendant CRC prepared false documents, she does not identify the documents

or suggest when they were prepared.  This not only fails to meet the pleading standards of Rule

9(b), it does not provide the court with sufficient information to evaluate the statute of

limitations issue.

Plaintiff does allege in connection with her fraud claims as well as with every

other cause of action that she did not discover the basis of the claims until January 2011. To rely

on a claim of delayed discovery, a plaintiff must allege facts showing that the facts could not

have been discovered earlier, even in the exercise of reasonable diligence, and identifying how

and when plaintiff discovered the fraud. *Briosos v. Wells Fargo Bank*, 2011 WL 1740100, at *4

(N.D. Cal. May 5, 2011); *but see Bonds v. Nicoletti Oil, Inc.*, 2008 WL 2233511, at **7-8 (E.D.

Cal. May 28, 2008) (questioning whether California pleading standards apply, but finding it

plaintiff's burden to plead facts supporting delayed discovery).  Plaintiff's bare claim about the

delayed date of her discovery does not save this claim from the operation of the statute of

limitations.  She will be given leave to amend this portion of the complaint, if she is able.

  E.  <u>Breach of Fiduciary Duty (Sixth Cause Of Action)</u>

    Plaintiff alleges that defendants breached their fiduciary duty to plaintiff by

inducing her to enter into a transaction contrary to plaintiff's interests and intentions and that

was not suited to plaintiff's income and expenses.  Compl. ¶¶ 105-106.  Defendants argue they

owe no fiduciary duty to plaintiff; plaintiff counters that defendants were under a duty to work

with plaintiff when she requested assistance, as required by §§ 2924 and 2923.5 of the California

Code of Civil Procedure, and that TILA imposes duties on the defendants to disclose changes in

the finance charge, among other things.  Opp'n at 18-19.  As these theories are not part of the

challenged cause of action, but appear only in opposition to the motion to dismiss, the court will

not consider them in determining whether the cause of action is sufficiently pleaded.

    The elements of a claim of breach of fiduciary duty are: (1) the existence of a

fiduciary duty; (2) a breach of that duty; (3) damage as the result of the breach.  *Rosal v. First*

*Federal Bank of California*, 671 F.Supp.2d 1111, 1128 (N.D. Cal. 2009).  Under California law,

there is no fiduciary relationship between a lender and a borrower when "the institution's

involvement in the loan transaction does not exceed the scope of its conventional role as mere

lender of money."  *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1096

(1991); *Rosal*, 671 F.Supp. 2d at 1129.  Courts have similarly determined that a loan servicer

owes no fiduciary duty to a borrower "when its involvement in the transaction does not exceed

1  the scope of its conventional role as a loan servicer such that it assumed a fiduciary duty."

2  *Huerta v. Ocwen Loan Servicing, Inc.*, 2010 WL 728223, at *4 (N.D. Cal. Mar. 1, 2010);

3  *Walters v. Fidelity Mortgage of California, Inc.*, 730 F.Supp.2d 1185, 1205 (E.D. Cal. 2010).

4         Plaintiff alleges generally that defendant AMPRO was not really the lender, but

5  rather was a broker because the money actually came from investors.  Compl. ¶ 20.  Whether or

6  not this is sufficient to allege a breach of fiduciary duty against AMPRO, it does not assist in the

7  claim against the other defendants: nothing in the complaint suggests that they owe any fiduciary

8  duties to plaintiff.  *See Barbara A. v. John G.*, 145 Cal.App.3d 369, 382 (1983) (A fiduciary

9  relationship exists when one of the parties to a transaction "is duty bound to act with the utmost

10  good faith for the benefit of the other party.").

11         F.  Unjust Enrichment (Seventh Cause of Action)

12         Plaintiff alleges that defendants had an implied contract with her to ensure she

13  understood all fees and to impose only those fees related to the settlement of the loan and that,

14  because they did not do so, they cannot retain the benefits of their actions.  Compl. ¶¶ 111-112.

15  In addition, defendants have been unjustly enriched by "the receipt of payment from third

16  parties, including . . . investors, insurers, the United States Department of the Treasury, the

17  United States Federal Reserve, the FDIC and other banks."  Compl. ¶ 114.

18         Defendants argue that this is not a separate cause of action, but rather a theory of

19  recovery and that, to the extent it is a separate cause of action, it is insufficiently pled.  MTD at

20  15-16.  Plaintiff cites no cases, but argues generally that defendants have profited from "using

21  Plaintiff's identity, credit score, and reputation . . . .to buy mortgage back securities."  Opp'n at

22  15.

23         The elements of an unjust enrichment claim are "'receipt of a benefit and [the]

24  unjust retention of the benefit at the expense of another.'"  *Peterson v. Cellco Partnership*,

25  164 Cal.App.4th 1583, 1593 (2008) (quoting *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726

26  (2000)).  It is, as defendants argue, not an independent cause of action, but rather is pled as part

of a quasi-contract claim "in order to avoid unjustly conferring a benefit upon a defendant where there is no valid contract." *Ram v. Wachovia Mortg., FSB*, 2011 WL 1135285, at *9 (E.D Cal. Mar. 25, 2011). Plaintiff lumps all the defendants together, failing to identify which of them received the alleged fees and kickbacks and to identify the improper nature of the fees themselves. This is insufficient to state a claim. *Gomez v. World Savings Bank FSB*, 2010 WL 5280004, at *5 (E.D.Cal. Dec. 13, 2010) ("[T]he FAC fails to allege which Defendants received what monies and thus fails to provide fair notice of the nature of Plaintiff's unjust enrichment claim."); *Jacob v. Aurora Loan Servs.*, 2010 WL 2673128, at *4 (N.D.Cal. July 2, 2010) (rejecting as too vague to state a plausible claim allegations that Defendants were unjustly enriched by charging fees unrelated to the settlement of the plaintiff's loans, and by "charging a higher interest rate, fees, rebates, kickbacks, profits, and gains and YSP fee unrelated to the settlements [sic] services provided at closing").

Plaintiff's contention that she is somehow entitled to bring a cause of action for unjust enrichment based on defendants' receipt of money from third parties is breathtaking in its frivolity. Counsel is reminded that her points and authorities are subject to Rule 11, and cautioned that further frivolous pleading may result in sanctions, including dismissal of this action.

G. Civil Conspiracy (Eighth Cause of Action)

Plaintiff alleges that "in connection with the application for and the consummation of the mortgage loan the subject of this action [*sic*], Defendants agreed . . . to engage in a course of conduct designed to further an illegal act . . . and to commit one or more overt acts in furtherance of the conspiracy to defraud Plaintiff, including but not limited to, the commencement of foreclosure. . . ." Compl. ¶ 118. She incorporates the earlier paragraphs of the complaint in this cause of action, but then does not identify which of the many previous paragraphs support the cause of action.

/////

1        Defendants argue that the conspiracy claim fails because plaintiff does not allege

2    that defendants were aware that a tort was planned or describe how defendants, who were not

3    involved in the loan origination, conspired at the time of the origination to drive plaintiff into

4    foreclosure.  MTD at 17.  Plaintiff argues that the claim is sufficiently pled.

5        The elements of a cause of action for civil conspiracy in California are the

6    formation and operation of the conspiracy, wrongful conduct in furtherance of the conspiracy,

7    and damage resulting to the plaintiff from an act or acts done in furtherance of the common

8    design.  *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995)*; see also*

9    *Doctors' Co. v. Superior Court*, 49 Cal.3d 39, 44 (1989); *Champlaie*, 706 F.Supp.2d at 1057.

10   "[T]ort liability arising from conspiracy presupposes that the conspirator is legally capable of

11   committing the tort; i.e., that he or she owes a duty to plaintiff recognized by law and is

12   potentially subject to liability for breach of that duty."  *Applied Equipment Corp. v. Litton Saudi*

13   *Arabia Ltd.*, 7 Cal.4th 503, 511 (1994); *Champlaie*, 706 F.Supp.2d at 1057.  Civil conspiracy is

14   not an independent tort but rather a way of imposing liability on those who share a common plan

15   with tortfeasors.  *Applied Equipment Corp.*, 7 Cal. 4th at 510-11.

16        Like civil conspiracy in general, a conspiracy to defraud is not an independent

17   tort, but rather "only serves as a theory of liability for claims of fraud."  *Lane v. Vitek Real*

18   *Estate Industries Group*, 713 F.Supp.2d at 1103; *Mehrtash v. Mehrtash*, 93 Cal.App.4th 75, 82

19   (2001) ("there is no separate tort of civil conspiracy, and there is no civil action for conspiracy to

20   commit a recognized tort unless the wrongful act itself is committed . . . .").  In California,

21   "nondisclosure is not ordinarily actionable unless the defendant is a fiduciary with a duty to

22   disclose," but "active concealment or suppression of facts by a nonfiduciary is the equivalent of

23   a false representation, i.e., actual fraud."  *Younan v. Equifax, Inc*., 111 Cal.App.3d 498, 512-13

24   (1980).  Because a conspiracy to defraud requires that the defendants engaged in fraud, the strict

25   pleading requirements of Rule 9(b) apply.  *Lane*, 713 F.Supp.2d at 1103.

26   /////

1    Nothing in the complaint addresses the formation and operation of the alleged

2    conspiracy, not even a bare recitation of the elements.  In addition, to the extent plaintiff is

3    relying on AMPRO's alleged failure to identify the "true nature" of the lender, nothing suggests

4    that these defendants, who played no role in the loan origination, had any duty to disclose any of

5    this information to plaintiff.  Moreover, to the extent the conspiracy is one to defraud, plaintiff

6    has not come close to meeting the pleading standards for fraud, as discussed in section III D

7    above.  Plaintiff will be given the opportunity to amend this claim, if she is able.

8         H.  RICO (Ninth Cause of Action)

9         In a rambling set of paragraphs, plaintiff alleges that defendants' use of multiple

10   corporate entities and predetermined acts designed to defraud plaintiff constitutes a RICO

11   enterprise; that the "predicate acts here cluster around violations of federal law, including

12   mortgage lending, bank regulations and consumer credits [*sic*] laws . . . along with violations of

13   various California state laws concerning conveyance of notes and deeds of trust . . ."' that "other

14   RICO predicate acts were part of the overall conspiracy and pattern of racketeering *activity*

15   alleged herein, *e.g.*, mail fraud and bank fraud"; that the exhibits show the "false and fraudulent

16   documents filed with the Placer County Recorder's Office. . ."; that the defendants "converted

17   [plaintiff's] note and deed of trust to a Mortgage Backed Security, to charge her for insurance

18   and other forms of credit enhancements, which have paid Plaintiff's note, thereby falsely

19   claiming a 'default' on the obligation."  Compl. ¶¶ 125-130 (emphasis in original).  Defendants

20   argue that plaintiff has failed to allege sufficient facts in support of her claimed RICO violation.

21   In response, plaintiff appears only to have copied the general allegations of the complaint and

22   pasted them into her points and authorities; she has provided no meaningful analysis nor cited

23   any case law.

24        Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or

25   associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct

26   of such enterprise's affairs through a pattern of racketeering activity."  "'Racketeering activity'

17

in turn, is defined to include a number of generically specified criminal acts as well as the commission of one of a number of listed predicate offenses." *Sosa v. Directv, Inc*., 437 F.3d 923, 939 (9th Cir. 2006).  A "pattern of racketeering activity" requires at least two acts.  18 U.S.C. § 1961(1), (5) & (6).

Although § 1962 defines a crime, a plaintiff may seek civil remedies for RICO violations if she has been "injured in [her] business or property by reason of a violation of section 1962. . . ."  18 U.S.C. § 1964(c).  The elements of a RICO claim are "(1) conduct; (2) of an enterprise; (3) through a pattern (4) of racketeering activities (known as 'predicate acts'); (5) causing injury to the plaintiff's 'business or property.'"  *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).

In addition, under §§ 1962(d) and 1964(c), a person may be civilly liable if he conspired to violate any of the subsections of § 1962.  *Beck v. Prupis*, 529 U.S. 494, 500 (2000).  A RICO conspiracy presupposes the existence of a substantive violation of RICO, but a conspirator may be liable even if he does not commit or agree to commit "the two or more predicate acts requisite to the underlying offense."  *Salinas v. United States*, 522 U.S. 52, 65 (1997); *Howard v. America Online, Inc*., 208 F.3d 741, 751 (9th Cir. 2000).

Plaintiff's claim centers on defendants' alleged predatory lending practices and general fraud; however neither fraud, in and of itself, nor the creation of fraudulent loan documents are predicate offenses under RICO.  *See Derakhshan v. Mortgage Electronic Registration Systems*, 2009 WL 3346780, at *4 (C.D. Cal. Oct.13, 2009) (predatory lending is not predicate offense for RICO).  Plaintiff has alleged that defendants have engaged in wire fraud and bank fraud, both of which are predicate offenses, 18 U.S.C. § 1961(1), but has made no attempt to identify which acts constitute either wire fraud or bank fraud.  This is especially problematic, as the heightened pleading standards of Rule 9(b) apply when the RICO predicate acts are acts of fraud.  *Edwards v. Marin Park, Inc*., 356 F.3d 1058, 1065–66 (9th Cir. 2004)

/////

1   (citing *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir.1989)).  Plaintiff's

2   conclusory allegations, not improved by argument, do not meet this standard.

3       I.  <u>Quiet Title</u> <u>(Tenth Cause of Action)</u>

4           Plaintiff alleges that none of the defendants have any standing to foreclose,

5   because

> the real party in interest on the lender's side may be the owner of
> the mortgage backed security issued by the servicing and pooling
> vendor, the insurer through some claim equitable interests [*sic*], of
> the Federal Government through the United States Department of
> the Treasury or the Federal Reserve.  The security is a 'securitized'
> bond deriving its value from the underlying mortgages, of which
> the subject mortgage is one.  Thus Plaintiff is entitled to quiet title
> against Defendants . . . .

11  Compl. ¶ 152.  In her opposition to the motion to dismiss, plaintiff claims there is no default

12  because the payments on the obligation are current.  *See also* Compl.  ¶ 31.  She fails to explain

13  how this squares with the exhibits showing she ceased making payments in July 2009.  Compl.,

14  Ex. E.  Defendants argue that plaintiff has satisfied none of the pleading requirements for a quiet

15  title action and has not tendered the amount of the unpaid debt.  MTD at 18-19.

16          Tender of the indebtedness is required to quiet title in California.  *Aguilar v. Boci*,

17  39 Cal.App.3d 475, 477 (1974) ("the cloud upon his title persists until the debt is paid");

18  *Kelley v. Mortgage Electronic Registration Systems Inc*., 642 F.Supp.2d 1048, 1057 (N.D. Cal.

19  2009).  Plaintiff suggests it would be inequitable to require tender, but has failed to show she has

20  even attempted to do equity in any respect.  This claim is dismissed.

21      J.  <u>Usury</u>

22          Many of the allegations under this heading relate to the fraud claim, addressed in

23  section III D.  There does not appear to be an independent claim of usury:  in California, "the

24  usury laws protect against the oppression of debtors through excessive interest rates charged by

25  lenders." *Agapitov v. Lerner*, 108 Cal.App.4th 830, 838 (2003).  A usury claim has four

26  /////

elements: the transaction must be a loan or forbearance[3], the interest must exceed the statutory maximum, the loan and interest must be absolutely repayable by the borrower, and the lender must intend to enter into a usurious transaction. *Ghirardo v. Antonioli*, 8 Cal.4th 791, 798 (1994). An interest rate that exceeds ten percent per annum may be usurious. Cal. Const. Art. 15 § 1. Plaintiff has said absolutely nothing about the interest rate in this case and so has not pleaded a cause of action for usury.

### K. Wrongful Foreclosure And Breach Of Trust Instrument (Twelfth & Thirteen Causes of Action

Plaintiff's lengthy diatribe against the mortgage industry and the securitization of her mortgage does not clearly identify the underlying basis of this claim. It appears that plaintiff's allegations rest on her claim that the chain of title is convoluted, that MERS does not have any authority to act in connection with the deed of trust on her house, and that at the time the first Notice of Default was prepared, CRC had not been substituted as trustee. Compl. ¶¶ 39-53. She also relies on the defendants' purported failure to "work with Plaintiff in any reasonable way to avoid foreclosure . . . ." Compl. ¶ 55 & Ex. E.[4] In opposition to the motion to dismiss, plaintiff particularly relies on the fact that Deborah Brignac signed three of the documents in the chain of title and suggests this shows forgery. Opp'n at 8.

#### 1. Substitution Of The Trustee

Under California's non-judicial foreclosure procedure, a notice of default must be recorded by the trustee, mortgagee or beneficiary of the deed of trust. Cal. Civ. Code § 2924(a)(1). In this case, the substitution of CRC as trustee was in fact recorded before the

---

[3] "'A forbearance occurs when the creditor, in exchange for consideration, agrees to wait for a period of time to collect the debt. A forbearance may also occur in credit sale transactions, where the original note is modified to extend the period of payment.'" *Roodenburg v. Pavestone Co., L.P.*, 171 Cal.App.4th 185, 192 (2009) (quoting *Sheehy v. Franchise Tax Bd.*, 84 Cal.App.4th 280, 284 (2000)).

[4] These letters show, for the most part, that Tilley was demanding a compromise or short sale to her.

1   Notice of Default: the recordation was accomplished by the properly substituted trustee.

2   Plaintiff notes that CRC signed the Notice before it was substituted, but provides no authority

3   suggesting that the date of the signature rather than the date of the recorded substitution is what

4   governs the propriety of the Notice of Default.  Even assuming plaintiff's argument is correct,

5   she cannot show prejudice.  In *U.S. Hertz, Inc. v. Niobrara Farms*, 41 Cal.App.3d 68 (1974), the

6   court found a party was not prejudiced when the substitution of trustee was recorded one minute

7   after the notice of default was recorded.  *See also Fontenot v. Wells Fargo Bank, N.A.*, 198

8   Cal.App.4th 256, 271-72 (2011) (showing of prejudice required).  In this case, the properly

9   substituted trustee is the entity proceeding with the trustee's sale.  *Compare Dimock v. Emerald*

10  *Properties LLC*, 81 Cal.App.4th 868 (2000) (entity that conducted the sale had been replaced as

11  trustee; foreclosure void).  Plaintiff cannot prevail on this theory.

12          2.  California Code of Civil Procedure Section 2923.5

13          Plaintiff alleges that CRC did not comply with this section because it was not the

14  properly substituted trustee at the time it claimed to have made efforts to contact plaintiff to

15  discuss options to foreclosure.  Compl. ¶ 52.

16          Under  section 2923.5 a lender, beneficiary or authorized agent may not file a

17  notice of default until thirty days after it has contacted the borrower to explore options for

18  avoiding foreclosure.  *Mabry v. Superior Court*, 185 Cal.App.4th 208, 221 (2010).  Plaintiff

19  alleges that CRC could not comply because it had not been properly substituted during the thirty

20  day window.  However, the statute does not require the trustee to make the contact and, in this

21  case, the trustee averred that the beneficiary had complied with the provisions of the Civil Code.

22  RFJN, Ex. 5.  Plaintiff's exhibits show that she had numerous contacts about loan modification

23  in 2008, well before the Notice of Default was filed.  Compl., Ex. E.

24  /////

25  /////

26

3.  MERS' Authority To Assign The Deed Of Trust

A number of courts considering the language used in the deed of trust at issue have concluded that it confers on MERS the rights of the beneficiary, from foreclosing on the property, to assigning its beneficial interest, to substituting a new trustee. *See Pantoja v. Countrywide Home Loans*, 640 F. Supp. 2d 1177, 1188–89 (N.D. Cal. 2009) (foreclosing); *Hensley v. Bank of New York Mellon*, 2011 WL 2118810, at *2 (E.D. Cal. May 27, 2011) (assigning beneficial interest).  Courts that have found the form deed of trust to give MERS broad authority have generally neither focused on nor discussed the phrase "when necessary to comply with law or custom," suggesting the phrase does not restrict MERS' authority under the deed.

Other courts have found that whatever the role a nominee may play when "necessary to comply with law and custom," MERS acts as the agent of the lender and may assign a beneficial interest in the deed of trust and appoint a substitute trustee. *Fontenot*, 198 Cal.App.4th at 270-71 (although MERS may not have the authority in its own right to assign the beneficial interest, it could do so as nominee, or agent, for the lender); *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal.App.4th 1149, 1156 n.7 & 1157 (2011); *In re Macklin*, 2011 WL 2015520, at *5 (E.D. Cal. May 19, 2011); *Perlas v. Mortg. Elec. Registration Sys. Inc.*, 2010 WL 3079262, at *3 (N.D. Cal. Aug. 6, 2010); *Kurek v. Am.'s Wholesale Lender*, 2011 WL 3240482, at *2 (N.D. Cal. 2011).

4.  Recordation Of The Assignment of The Deed Of Trust

Plaintiff claims that the foreclosure would be invalid because the assignment of the deed of trust was not recorded as required by section 2932.5 of the California Code of Civil Procedure; this section requires that the assignment of a beneficial interest in a mortgage be recorded before the power of sale may be executed.  This claim is puzzling: the chain of title shows that MERS in fact recorded the assignment from Ampro to WaMu before the Notice of Default and Election to Sell was recorded.  RFJN, Exs. 3 & 5.  Moreover, the weight of authority

1   holds that this section does not apply to assignments of deeds of trust.  *Calvo v. HSBC Bank*

2   *USA, N.A.*, 199 Cal.App.4th 118, 120-23 (2011); *Caballero v. Bank of America*, 2010 WL

3   4604031, at *3 (N.D. Cal. Nov. 4, 2010); *Selby v. Bank of America*, 2010 WL 4347629, at *3

4   (S.D. Cal. Oct. 27, 2010).  The court does not find *In re Salazar*, 448 B.R. 814 ( (Bankr. S.D.

5   Cal. 2011), which holds that the section applies to deeds of trust, persuasive.

6          L.  Failure To Join Michael Tilley

7                 Defendants argue that the complaint is fatally flawed because plaintiff has failed

8   to join Michael Tilley, the other party to the note and Deed of Trust, with the result that

9   defendants are exposed to the risk of multiple or inconsistent obligations with respect to the loan

10  and deed of trust.

11                 Under Rule 19(a)(1)(B)(ii) of the Federal Rules of Civil Procedure, a person must

12  be joined as a party if the failure to join that party will leave an existing party "subject to a

13  substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the

14  interest."  Defendants cite no case law in support of their argument that Michael Tilley's absence

15  from the action requires its dismissal.  The court declines to fashion defendants' argument for

16  them.

17  IV.  The Motion For A Preliminary Injunction

18                 The party seeking injunctive relief must show that "he is likely to succeed on the

19  merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

20  balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v.*

21  *Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Munaf v. Geren*, 553 U.S. 674,

22  689-90 (2008).  In this case, because the court has found that none of the claims in the complaint

23  withstands a motion to dismiss, it cannot find that plaintiff is likely to succeed on the merits.

24  /////

25  /////

26  /////

IT IS THEREFORE ORDERED that:

1. Defendants' motion to dismiss (ECF No. 8) is granted with prejudice as to plaintiff's TILA and HOEPA rescission claims, but without prejudice as to plaintiff's other claims; any amended complaint must be filed within twenty-one days of the date of this order; and

2. Plaintiff's motion for a preliminary injunction (ECF No. 19) is denied.

DATED:  November 23, 2011.

_____
UNITED STATES DISTRICT JUDGE